UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CIANA PLUVIOSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 18-12347-PBS |
| SELECT PORTFOLIO SERVICING, INC. | ) | |
| and KORDE & ASSOCIATES, | ) | |
| | ) | |
| Defendants. | ) | |

# REPORT AND RECOMMENDATION ON DEFENDANTS'
# MOTIONS TO DISMISS AND PLAINTIFF'S MOTION TO REMAND

April 12, 2019

DEIN, U.S.M.J.

## I. INTRODUCTION

The *pro se* plaintiff, Ciana Pluviose, has brought this action against Select Portfolio Servicing, Inc. ("SPS") and Korde & Associates ("K&A") over the allegedly wrongful foreclosure of her residence in Brockton, Massachusetts.[1] The plaintiff originally brought suit in Plymouth County Superior Court, alleging that SPS had engaged in unfair and deceptive practices in relation to the foreclosure of her home. SPS removed the action to federal court with K&A's consent. This matter is presently before the court on the plaintiff's "Motion to Remand" (Docket No. 9), by which the plaintiff seeks to have this case remanded to the state court. Both

---

[1] The state court record is unclear as to whether Wells Fargo Bank and Ocwen Loan Servicing, LLC were intended to be defendants to the state court action. (See Docket No. 8 at 1, 6). However, they are not listed in the caption to the original complaint, nor are they listed on this court's docket. Therefore, they do not factor in this court's analysis.

defendants contend that even though there does not appear to be complete diversity of citizenship among the parties due to the existence of K&A as a defendant, this court may retain diversity jurisdiction under the doctrine of fraudulent joinder.

Additionally before the court are SPS's Motion to Dismiss (Docket No. 11) and K&A's Motion to Dismiss (Docket No. 14).  SPS contends that the plaintiff has failed to state a claim upon which relief may be granted.  K&A separately argues that because the plaintiff has failed to advance any allegations or claims against K&A, it should be removed as a party to the case under Fed. R. Civ. P. 21.  The plaintiff has not filed an opposition to either of the defendants' motions to dismiss.  Nevertheless, "the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim."  Vega-Encarnacion v. Babilonia, 344 F.3d 37, 41 (1st Cir. 2003).

As detailed herein, this court finds that the Complaint, in its present form, does not articulate any factual allegations against K&A.  Therefore, K&A must be dismissed and this court should retain subject matter jurisdiction under the doctrine of fraudulent joinder.  The Complaint also fails to state a claim against SPS upon which relief may be granted.  As a result, this court recommends to the District Judge to whom this case is assigned that the plaintiff's motion to remand be DENIED, K&A's motion to dismiss be ALLOWED, and SPS's motion to dismiss be ALLOWED.  This court further recommends that the District Judge allow the plaintiff thirty days to amend her Complaint to clarify the allegations and claims being made since this court cannot state as a matter of law that no possible claims can be asserted against the defendants.

## II. STATEMENT OF FACTS

When ruling on a motion to dismiss, the court must accept as true all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. See Cooperman v. Individual Inc., 171 F.3d 43, 46 (1st Cir. 1999). Where, as here, the plaintiff is proceeding *pro se*, the court must construe her allegations liberally. See Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976) (a *pro se* complaint, however inartfully pleaded, must be liberally construed).

The plaintiff is a sixty-year-old certified nursing assistant working in Randolph, Massachusetts. (See Docket No. 1-3 ("Complaint") ¶¶ 1, 2). Her native language is Haitian Creole and she has difficulty understanding English, both written and verbal. (Id. ¶ 5). In December 2001, Pluviose and her then-husband took title to a property located in Brockton, Massachusetts. (Id. ¶ 1). To finance the transaction, they took on a $189,000 mortgage with Mortgage Trust Group, Inc. (Id.). The mortgage was eventually assigned to Wells Fargo Bank, National Association ("Wells Fargo" or "the bank"), as trustee for SABR Trust 2004-OPI, Mortgage pass through certificates, series 2004-OPI. (See id.). Although not explicitly stated in the Complaint, SPS appears to have acted as the loan servicer for Wells Fargo. (See Docket No. 12 at 1). Similarly, although K&A is not mentioned in any of the allegations, K&A appears to have acted as foreclosure counsel on behalf of Wells Fargo. (See Docket No. 15 at 1).

Pluviose's husband made monthly payments on the couple's mortgage until 2010, when he left Pluviose. (Complaint ¶ 3). The couple's divorce was finalized in 2013 and Pluviose's husband conveyed the property to her. (Id.). The loss of her husband's income created

[3]

significant financial hardship for the plaintiff. (Id. ¶ 4). She also suffered a stroke during this period. (Id.). Consequently, she became delinquent on her monthly mortgage payments. (Id.).

Pluviose contacted a local housing counseling agency for assistance with her mortgage. (Id.). Because she has difficulty with English, Pluviose used a translator and her son to communicate with staff at the counseling agency. (Id. ¶ 5). Through the agency, Pluviose was able to obtain financing from a new lender for a "short pay"[2] of the mortgage loan. (Id. ¶ 6). Due to title issues with the property, the refinancing process was delayed and the new lender required Pluviose to obtain a new agreement from the bank in order to effectuate the short pay transaction. (Id.). The bank agreed to provide a new agreement and indicated that it would send the agreement to the counseling agency, which would then forward it to the new lender. (Id. ¶ 7). However, the bank sent the new agreement to Pluviose, rather than the agency. (Id.). Pluviose was unable to read the agreement (which was presumably written in English). (Id.). By the time someone helped the plaintiff identify the contents of her mail, she "realized it was acknowledged on the same day the foreclosure was scheduled."[3] (Id.). She asserts that the scheduling of the foreclosure did not give her enough notice or time to complete the short pay of the mortgage loan. (Id.). She also notes that the counseling agency believes that she was not given a fair and reasonable opportunity to complete the short pay. (Id. ¶ 12).

---

[2] This appears to be a reference to a "short sale," an alternative to foreclosure wherein "the lender agrees to allow the borrower to sell the home for less than what [s]he owes on the mortgage." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 69 n.3 (1st Cir. 2014).

[3] It is unclear from the wording of the Complaint whether the plaintiff did not read the new agreement until the day of the foreclosure, or whether the agreement was dated and/or sent on the day of the foreclosure.

Pluviose subsequently filed the instant suit in Plymouth Superior Court, alleging that SPS had made (unspecified) promises to the plaintiff and the counseling agency that ultimately proved to be misleading. (Id. ¶ 13). She also asserts that SPS engaged in unfair and deceptive practices. (Id. ¶ 9). She seeks an injunction against the recording of a foreclosure deed, as well as a vacatur of the foreclosure judgment. (Id. at 4). She also seeks to compel SPS to allow Pluviose to complete the short pay transaction and to "[c]ompel the bank to act in good faith in working towards a resolution by providing adequate notices in a timely manner and allow a reasonable time in the borrower's response." (Id.). SPS subsequently removed this case to federal court, with K&A's consent, on the basis of diversity jurisdiction. (See Docket No. 1).

Additional factual details will be provided below where appropriate.

### III.  DISCUSSION

**A.    Motion to Remand**

The plaintiff contends that the case should be remanded to state court because she is unable to afford an attorney and the "assistance [she] can receive is only available in Plymouth County." (Docket No. 9). This court is sympathetic to the difficult situation in which the plaintiff finds herself, particularly as a non-native English speaker with limited financial resources. However, a remand is only appropriate if this court lacks subject matter jurisdiction over the Complaint. The instant case was removed to federal court on the basis of diversity jurisdiction. Pursuant to 28 U.S.C. § 1332(a):

> district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –
>
> (1) citizens of different States[.]

[5]

Thus, to have subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), there must be "complete diversity of citizenship as between all plaintiffs and all defendants." ConnectU LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008).  Here, the parties do not appear to dispute that both the plaintiff and one of the defendants, K&A, are citizens of Massachusetts.  Rather, the defendants allege that under the doctrine of fraudulent joinder, K&A was improperly named as a party and its Massachusetts citizenship does not defeat complete diversity of the parties.

"The doctrine of fraudulent joinder permits a federal court to 'disregard, for jurisdictional purposes,' the citizenship of non-diverse defendants" in certain instances.[4]  Universal Truck & Equip. Co., Inc. v. Southworth-Milton, Inc., 765 F.3d 103, 109-10 (1st Cir. 2014) (quoting Mayes, 198 F.3d at 461).  Specifically, diversity jurisdiction "is not defeated by the joinder of a non-diverse defendant where there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted against the non-diverse defendant." Id. at 108 (footnote omitted).  In making such determinations, "the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available."  Mayes, 198 F.3d at 464 (citations and internal quotations omitted).  Thus, a defendant's burden to establish fraudulent joinder is a heavy one.  See id.; see also Air-Con, Inc. v. Daikin Applied Latin Am. LLC, C.A. No. 15-2683 (GAG), 2016 WL 4991513, at *3 n.5 (D.P.R. Sept. 19, 2016) ("It is important that courts

---

[4] As the Fourth Circuit has observed, the term "fraudulent joinder" is somewhat of a misnomer, given that the defendant need not show fraud or joinder to invoke the doctrine.  Mayes v. Rapoport, 198 F.3d 457, 461 n.8 (4th Cir. 1999).  "In fact, it is irrelevant whether the defendants were 'joined' to the case or originally included as defendants; rather, the doctrine is potentially applicable to each defendant named by the plaintiff either in the original complaint or anytime prior to removal." Id.

impose a heavy burden on defendants who remove on the basis of alleged fraudulent joinder because the practice of routinely removing cases to federal court by making borderline arguments of fraudulent joinder imposes tremendous costs on plaintiffs and the court system." (quoting 16 James Wm. Moore et al., Moore's Federal Practice-Civil § 107-52[4][c]).

In the instant case, K&A appears to have served as legal counsel for Wells Fargo.  As SPS notes, under Massachusetts law "[a] lawyer representing a lender owes no duty to the borrower."  Manson v. GMAC Mortg., LLC, 283 F.R.D. 30, 42 (D. Mass. 2012).  On this basis, both defendants contend that there is no reasonable possibility that the plaintiff could plausibly assert a claim against K&A, as there is no possible way that it owed her any sort of duty.  This court agrees that the instant complaint does not state a claim against K&A and, therefore, must be dismissed as to K&A.  However, this court further concludes that there may be facts to support a claim against K&A so that the plaintiff should be granted leave to amend.  Such an amendment cannot, at this stage, be deemed futile as a matter of law.

As an initial matter, even the most liberal reading of the Complaint compels the conclusion that it does not state a claim against K&A.  Indeed, the Complaint does not mention K&A at all outside of the caption.  Thus, given that the Complaint contains no factual allegations, let alone legal claims, against K&A, there is no reasonable possibility that the Complaint, as pled, states a cause of action against K&A upon which relief may be granted.  Accordingly, K&A cannot be considered for jurisdictional purposes and this court has diversity jurisdiction under the doctrine of fraudulent joinder.  Therefore, the plaintiff's motion to remand must be DENIED.

[7]

Nevertheless, the plaintiff should be granted leave to amend to state a claim against K&A if possible. While the lender's attorney generally owes no duty to the borrower, "one possible exception to this [no-duty] rule is that a duty may exist to a nonclient who justifiably relies in some way on the attorney's services." Smith v. Deutsche Bank Nat'l Tr. Co. for Soundview Home Loan Tr. 2005-OPT4, Asset-Backed Certificates, Series 2005 OPT4, C.A. No. 17-12517-GAO, 2018 WL 4688309, at *2 (D. Mass. Sept. 28, 2018); see Kirkland Const. Co. v. James, 39 Mass. App. Ct. 559, 562-64, 658 N.E.2d 699, 701-02 (1995). Further, numerous other courts have found that well-pleaded allegations against law firm defendants for their foreclosure practices are sufficient to survive the fraudulent joinder standard. See, e.g., Valdez v. Fed. Nat'l Mortg. Ass'n, C.A. No. 13-11478-NMG, 2013 WL 4094782, at *2 (D. Mass. Aug. 9, 2013) (finding that naming of law firm did not constitute fraudulent joinder where firm was subject to over 100 pending suits for its foreclosure practices); Larace v. Wells Fargo Bank, N.A., C.A. No. 14-30043-MAP, 2016 WL 6609206, at *1-2 (D. Mass. Jan. 21, 2016) (naming of law firm was not fraudulent joinder where allegations against defendant firm focused on its counseling and assistance in business activities); see also Mack v. Wells Fargo Bank, N.A., 29 Mass. L. Rptr. 183, 2011 WL 6975961, at *2 (Mass. Super. Dec. 15, 2011) (finding that allegations as to defendant law firm's foreclosure practices "plausibly suggest a violation of c. 93A despite [the firm]'s status as attorney"). Thus, the plaintiff is not precluded as a matter of law from plausibly asserting a claim against K&A and leave to amend should be granted.[5]

---

[5] Although the court presently retains subject matter jurisdiction over the instant dispute, this court also recognizes that if the plaintiff were to file an amended complaint that articulated factual allegations against K&A, and if those allegations provided the basis for a cognizable claim against K&A, remand would likely be appropriate. Cf. Ullah v. BAC Home Loans Servicing LP, 538 F. App'x 844, 846 (11th Cir. 2013) (in context of claims pleaded under Georgia law, proper remedy for plaintiff's failure to satisfy

### B. K&A's Motion to Dismiss

K&A moves to be dismissed as a party to the litigation under Fed. R. Civ. P. 21, which permits the court to "at any time, on just terms, add or drop a party." As discussed, the Complaint fails to assert any factual allegations or legal claims against K&A. Accordingly, K&A motion to dismiss must be ALLOWED. See Polyplastics, Inc. v. Transconex, Inc., 713 F.2d 875, 877 (1st Cir. 1983) ("[A] finding of fraudulent joinder bears an implicit finding that the plaintiff has failed to state a cause of action against the fraudulently joined defendant . . . .").

### C. SPS's Motion to Dismiss

#### Standard of Review

SPS has moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6). Motions to dismiss under 12(b)(6) test the sufficiency of the pleadings. Thus, when confronted with such a motion, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. Cooperman, 171 F.3d at 46. Dismissal is only appropriate if the complaint, so viewed, fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

"In evaluating whether a complaint states a plausible claim, we 'perform [a] two-step analysis.'" Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (quoting Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015)). "First, the court must distinguish 'the complaint's

---

the pleading standards against a non-diverse defendant is "to allow the plaintiff to amend the complaint and provide a more definite statement," unless the complaint's allegations make it certain that the plaintiff will not be able to survive the fraudulent joinder standard). If K&A is a proper defendant, this court would lack diversity jurisdiction.

[9]

factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)) (additional citation omitted). This second step requires the reviewing court to "draw on its judicial experience and common sense." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Morales-Cruz, 676 F.3d at 224 (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)).

### Mass. Gen. Laws ch. 93A Claim

In contrast to K&A, SPS is directly mentioned in the plaintiff's Complaint. Although the Complaint does not explicitly articulate discrete causes of action against SPS, it asserts that SPS "engaged in unfair and deceptive practices." (Complaint ¶ 9). As Mass. Gen. Laws ch. 93A ("Chapter 93A") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce," the plaintiff appears to be asserting a cause of action under Chapter 93A. Mass. Gen. Laws ch. 93A, § 2. To make such a claim, a plaintiff must first mail a demand letter to a prospective defendant at least 30 days before filing suit, "identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered[.]" Mass. Gen. Laws ch. 93A, § 9(3). This notice requirement "is not merely a procedural nicety, but, rather, a prerequisite to suit" that "must be alleged in the plaintiff's

complaint." Rodi v. S. New England Sch. Of Law, 389 F.3d 5, 19 (1st Cir. 2004) (citations and internal quotations omitted).

Here, no allegations have been advanced, nor any evidence provided, to indicate that the plaintiff ever sent such a letter to SPS.  Thus, the plaintiff's Chapter 93A claim is subject to dismissal.  See Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 287, 475 N.E.2d 727, 735 (1985), and cases cited (demand letter is a prerequisite to suit and a special element that must be alleged in the complaint); Hugenberger v. Alpha Mgmt. Corp., 83 Mass. App. Ct. 910, 911, 990 N.E.2d 104, 106 (2013) (plaintiff has the burden of proving that a demand letter that met the statutory requirements of Chapter 93A was sent).  However, if the plaintiff did mail a demand letter to SPS, or if an exception to the demand letter requirement applies, see Mass. Gen. Laws ch. 93A, § 9(3), the plaintiff may seek to amend the Complaint to indicate as much. See Benjamin v. Fremont Inv. & Loan, C.A. No. 17-11727-PBS, 2018 WL 4017595, at *5 (D. Mass. Aug. 22, 2018).

Even if the demand letter requirement had been fulfilled in this case, the Complaint fails to provide enough factual allegations to set forth a Chapter 93A claim.  Although Chapter 93A does not define "unfair" or "deceptive" practices, the statute encompasses conduct that is "within the penumbra of some . . . concept of unfairness [or deceptiveness]; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to other businessmen." Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 234 (1st Cir. 2003) (internal quotations and citations omitted).  Thus, as a general matter, the Complaint "must illustrate something beyond a mere good faith dispute, failure to pay, or simple breach of contract." Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 358 (1st Cir. 2013).  In the context of an action

[11]

arising out of a plaintiff's foreclosure, "[i]t is not enough . . . to allege that defendants foreclosed on [the plaintiff's] property in violation of Massachusetts foreclosure law. Something more is required[.]"  Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 281 (1st Cir. 2013).

Here, while the plaintiff's Complaint includes a conclusory assertion that SPS engaged in "unfair and deceptive practices," it does not provide any factual allegations upon which to base that conclusion.  Although the Complaint describes the bank's involvement in the short pay transaction, it does not provide allegations as to what role, if any, SPS played.  The only factual assertion as to SPS's conduct is that SPS made unspecified "promises" that proved to be misleading.  Without additional factual allegations, this court cannot conclude that the plaintiff has set forth a cognizable claim under Chapter 93A.  See Woods, 733 F.3d at 358 ("This failure to set forth any particular acts or practices marked by an extortionate quality of unfairness and deceptiveness necessitates a finding that the facts as pled are insufficient to state a claim [under Chapter 93A]." (internal quotations, punctuation, and citations omitted)).[6]

---

[6] This court declines to address SPS's statute of frauds argument.  The court notes, however, that there appears to be conflicting authority on the extent to which the statute of frauds is implicated in agreements involving mortgages.  While some courts have concluded that "any agreement concerning a mortgage" must be in writing, see Saade v. Pennymac Loan Servs., LLC, C.A. No. 15-12275-IT, 2016 WL 6089684, at *2 (D. Mass. Oct. 17, 2016), other courts have held that agreements modifying the payment terms of the mortgage, rather than the underlying right, title, or interest in the land, do not fall within the statute of frauds.  See RFF Family P'ship, LP v. Link Dev., LLC, 907 F. Supp. 2d 155, 163 (D. Mass. 2012); Akar v. Fed. Nat'l Mortg. Ass'n, 845 F. Supp. 2d 381, 397 (D. Mass. 2012).  Among courts that recognize this exception, there appears to be further disagreement about the extent to which the exception would apply to an agreement to delay the foreclosure of a property.  Compare Akar, 845 F. Supp. 2d at 397 (oral agreement to postpone foreclosure while plaintiff's loan modification application was pending amounted to mere modification of timing, not rights, title, or interest, and did not fall within statute of frauds) with Seidel v. Wells Fargo Bank, N.A., C.A. No. 12-10766-RWZ, 2012 WL 2571200, at *4 (D. Mass. July 3, 2012) (disagreeing with Akar and holding that "altering the timing of the foreclosure right imposes serious restrictions on the mortgagee's right to possess the property," which falls within the statute of frauds).  Moreover, there is a question as to whether an alleged agreement

**Misrepresentation Claim**

SPS also contends that the plaintiff's allegation that SPS made "promises . . . which were misleading because [SPS] failed to act in harmony with the promises thy [sic] made" also fails to provide sufficient basis for a claim of negligent misrepresentation. (Complaint ¶ 13). Under Massachusetts law, a claim for negligent misrepresentation requires that the plaintiff establish that the defendant:

> (1) in the course of [the defendant's] business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that [the defendant] (6) failed to exercise reasonable care or competence in obtaining or communicating the information.

Gossels v. Fleet Nat'l Bank, 453 Mass. 366, 371-72, 902 N.E.2d 370, 377 (2009). Notably, "only statements of a factual nature that are false when made give rise to a cause of action for deliberate or negligent misrepresentation." Robert E. Ricciardelli Carpet Serv., Inc. v. Home Depot U.S.A., Inc., 679 F. Supp. 2d 192, 208 (D. Mass. 2010); see Cummings v. HPG Int'l, Inc., 244 F.3d 16, 21 (1st Cir. 2001). Promissory statements are not "false when made," and thus actionable, unless the defendant "never intended to carry out the promise" or knew that the promise was "impossible to perform." See Robert E. Ricciardelli Carpet Serv., Inc., 679 F. Supp. 2d at 208.

---

with the servicer of the mortgage, rather than the lender itself, implicates the statute of frauds. See HMC Assets, LLC v. Conley, C.A. No. 14-10321-MBB, 2016 WL 4443152, at *5 (D. Mass. Aug. 22, 2016) (oral agreement with loan servicer was not prohibited by statute of frauds because, as a servicer, the entity "did not own the mortgage and its relationship as a servicer for . . . the mortgagee and lender, did not involve the transfer of land.").

[13]

The Complaint refers to "promises" made by SPS but does not identify the substance of the alleged promises. The plaintiff appears to be alluding to promises about the amount of time the plaintiff would be afforded to complete the short pay transaction before the property would be foreclosed upon.[7] However, without more information in the Complaint, the court can only speculate as to the specifics of what SPS promised. More importantly, the plaintiff fails to allege that SPS never intended to carry out such promises, or that SPS knew that the promises were impossible to perform. The plaintiff only asserts that SPS's promises were "misleading" because SPS "failed to act in harmony" with them, regardless of whether such promises were false when made. Without more, these allegations fall short of stating a claim for negligent misrepresentation. See Fanger v. Leeder, 327 Mass. 501, 505-06, 99 N.E.2d 533, 535-36 (1951).[8]

---

[7] To the extent that the plaintiff is instead alluding to the bank's promise to send the new agreement to the counseling agency (rather than the plaintiff), this alleged promise was made by the bank, not SPS. Further, the Complaint does not allege that the bank did not intend to fulfill this promise when the bank originally made it or that the promise was impossible to perform.

[8] To the extent that the plaintiff intended to make out a claim of intentional misrepresentation or fraud, rather than mere negligent misrepresentation, the plaintiff has also failed to meet the heightened pleading requirements of such claims. Pursuant to Fed. R. Civ. P. 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Thus, the party claiming fraud "must specify the time, place, and content of an alleged false representation sufficiently to put [the opposing party] on notice and enable them to prepare meaningful responses." OrbusNeich Med. Co., Ltd., BVI v. Boston Sci. Corp., 694 F. Supp. 2d 106, 118 (D. Mass. 2010) (footnote omitted). As discussed, the Complaint fails to identify what specific promises SPS made, let alone where or when such promises were made.

**Promissory Estoppel**

Lastly, the court considers whether the plaintiff's allegation that SPS made misleading promises plausibly states a claim for promissory estoppel. To state a claim of promissory estoppel:

> a plaintiff must allege that "(1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise."

Carroll v. Xerox Corp., 294 F.3d 231, 242 (1st Cir. 2002) (quoting Loranger Constr. Corp. v. E.F. Hauserman Co., 6 Mass. App. Ct. 152, 154, 374 N.E.2d 306, 308 (1978)). As discussed above, the plaintiff fails to specify exactly what promises SPS made to her. The court is also unable to discern whether these unspecified promises induced the plaintiff to rely on them, let alone the manner in which she did so. Accordingly, the plaintiff has failed to state a claim upon which relief can be granted against SPS. This court thus concludes that SPS's motion to dismiss should be ALLOWED.

### IV. CONCLUSION

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the plaintiff's motion to remand (Docket No. 9) be DENIED, K&A's motion to dismiss (Docket No. 14) be ALLOWED, and SPS's motion to dismiss be ALLOWED (Docket No. 11). This court further recommends that the District Judge allow the plaintiff thirty days to amend her Complaint to clarify the allegations and claims being made.[9]

---

[9] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days after being served with this Report and Recommendation. The written

/ s / Judith Gail Dein  
Judith Gail Dein  
United States Magistrate Judge

---

objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).